JOHN C. BROOKS, COMMISSIONER OF LABOR OF NORTH CAROLINA, COMPLAINANT, v. McWHIRTER GRADING COMPANY, INC., RESPONDENT.

No. 8010SC243

(Filed 4 November 1980)

1. **Master and Servant § 114– OSHA violation – appeal to Review Board – adequacy of Board's order**

    In an appeal from a decision of a hearing examiner that respondent's violation of the Occupational Safety and Health Act was not repeated and serious and merited no penalty, the Safety and Health Review Board complied with its function and authority to "adopt, modify or vacate" the order of the hearing examiner, G.S. 95-135(i), where the Board's order restated the findings of fact made by the hearing examiner almost verbatim, narrated some of the evidence, and made additional findings, and where the decision portion of the order, although inartfully written, modified the order of the hearing examiner so as to conclude that the cited violation was repeated and serious and justified a penalty of $2,500.

2. **Master and Servant § 114– serious and repeated OSHA violation – sufficiency of evidence**

    The evidence supported a determination by the Safety and Health Review Board that respondent was guilty of a "serious" and "repeated" OSHA violation in failing "to slope to adequate angle of repose or provide adequate shoring for sewer line trench in hard or compact soil more than five feet in depth at job site" on 21 April 1977 where it showed that the trench in question was eight feet deep and at least eight feet in length; there was no sloping or shoring or wall support of any kind; and respondent had paid a fine for failing properly to shore, slope or otherwise protect the sides of a trench in 1974, although the 1974 violation was for work in soft or unstable soil rather than in hard or compact soil.

APPEAL by respondent from *Hobgood (Hamilton H.), Judge.* Judgment entered 12 October 1979 in Superior Court, WAKE County. Heard in the Court of Appeals 11 September 1980.

This action was instituted by the complainant through the issuance of a citation against the respondent. The citation charged respondent with a violation of the North Carolina

Occupational Safety and Health Act on 21 April 1977 by "failure to slope to adequate angle of repose or provide adequate shoring for sewer line trench in hard or compact soil more than five feet in depth at job site." The citation included a notation that the alleged violation was "serious" and "repeated", and also included a proposed penalty of $1,800.00.

A hearing was held before the Safety and Health Review Board hearing examiner. At the hearing, the State's evidence showed that on or about 18 November 1974 the sides of a trench excavated by respondent, McWhirter Grading Company, Inc., collapsed, killing one of the respondent's employees. Following an inspection of the site by a Safety Officer of the OSHA Division of the North Carolina Department of Labor, respondent was issued a citation for two violations of the Occupational Safety and Health Act of North Carolina. Respondent's trench failed to comply with the following standards:[1] "Sides of trenches in unstable or soft material, 5 feet or more in depth, shall be shored, sheeted, braced, sloped, or otherwise supported by means of sufficient strength to protect the employees working within them." 29 C.F.R. 1926.652(b) (1979); and "Additional precautions by way of shoring and bracing shall be taken to prevent slides or cave-ins when excavations or trenches are made in locations adjacent to backfilled excavations, or where excavations are subjected to vibrations from railroad or highway traffic, the operation of machinery, or any other source." 29 C.F.R. 1926.652(e) (1979). The respondent did not contest the 1974 citation and respondent paid the proposed penalty of $500.00.

[1]G.S. 95-127(15) contains the definition of "standards," as follows:

(15) The term "occupational safety and health standards" means a standard which requires conditions, or the adoption or use of one or more practices, means, methods, safety devices, operations or processes reasonably necessary and appropriate to provide safe and healthful employment and places of employment, and shall include all occupational safety and health standards adopted and promulgated by the Secretary which also may be and are adopted by the State of North Carolina under the provisions of this Article. This term includes but is not limited to interim federal standards, consensus standards, any proprietary standards or permanent standards, as well as temporary emergency standards which may be adopted by the Secretary, promulgated as provided by the Occupational Safety and Health Act of 1970, and which standards or regulations are published in the Code of Federal Regulations or otherwise properly promulgated under the federal act or any appropriate federal agencies.

The State's evidence further showed that on 21 April 1977, another of respondent's construction sites was visited by an OSHA Division Safety Officer. This inspection revealed an employee of respondent working in a trench eight feet deep, four feet wide and forty-five feet long. A thirty inch pipe had already been laid in approximately thirty-five of the trench's forty-five feet. The sides of the trench were neither shored nor sloped.[2]

Following the hearing, the hearing examiner made detailed findings of fact and concluded that although respondent did violate 29 C.F.R. 1926.652(c), such violation was neither repeated nor serious. The hearing examiner held that because the 1974 and the 1977 violations were of different subsections of the Act, the 1977 violation was not "repeated" as defined by statute and that the 1977 violation did not fit the statutory definition of "serious", because there were sufficient personnel and equipment at the site to "uncover a man very, very rapidly if there were a cave-in" and because the decision not to shore or slope was made by the foreman without the knowledge of the employer. The examiner ordered that the citation be affirmed but struck the proposed penalty.

On petition of the complainant, the full Safety and Health Review Board reviewed the decision and order of the hearing examiner and heard arguments from complainant and respondent. The Review Board then issued a decision in which it "overturned" the hearing examiner's order, "reinstated" the citation and assessed respondent with a penalty of $2,500.00 for a repeated and serious violation. In its decision, the Board discussed in detail the contentions of the parties and related those contentions to the evidence.

Pursuant to G.S. 95-141, respondent sought judicial review of the decision of the Board. The matter was heard in Superior

---

[2]In accordance with the provisions of G.S. 95-131, Part 1926 of Title 29 of the Code of Federal Regulations has been adopted and promulgated by the Commissioner of Labor. 29 C.F.R. 1926.652(c) provides:

Sides of trenches in hard or compact soil, including embankments, shall be shored or otherwise supported when the trench is more than 5 feet in depth and 8 feet or more in length. In lieu of shoring, the sides of the trench above the 5-foot level may be sloped to preclude collapse, but shall not be steeper than a 1-foot rise to each ½-foot horizontal. When the outside diameter of a pipe is greater than 6 feet, a bench of 4-foot minimum shall be provided at the toe of the sloped portion.

Court and from the judgment of the Superior Court affirming in its entirety the Review Board's decision, respondent appeals.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General George W. Lennon, for the State.*

*Ervin, Kornfeld & MacNeill, by John C. MacNeill, Jr., for respondent appellant.*

WELLS, Judge:

[1] Respondent first argues that the Superior Court erred in affirming the Review Board's decision because the Board did not make the appropriate findings of fact and conclusions of law to support its decision.

G.S. 95-135(d), in pertinent part, provides as follows:

(d) Every official act of the Board shall be entered of record and its hearings and records shall be open to the public. The Board is authorized and empowered to make such procedural rules as are necessary for the orderly transaction of its proceedings. Unless the Board adopts a different rule, the proceedings, as nearly as possible, shall be in accordance with the Rules of Civil Procedure, G.S. 1A-1. . . .

G.S. 95-135(i), in pertinent part, provides as follows:

(i) A hearing examiner appointed by the chairman of the Board shall hear, and make a determination upon any proceeding instituted before the Board and may hear any motion in connection therewith, assigned to such hearing examiner, and shall make a report of any such determination which constitutes his final disposition of the proceedings. . . . Upon review of said report and determination by the hearing examiner the Board may adopt, modify or vacate the report of the hearing examiner and notify the interested parties. . . .

The Board has adopted rules of procedure pursuant to the authority granted in G.S. 95-135(d). *See* Title 13, ch. 7B, sec. 600, N.C. Administrative Code Rules. Rules of Procedure .0601 and .0602, in pertinent part, provide as follows:

.0601 DECISIONS OF HEARING EXAMINER

(a) The decision of the hearing examiner shall include findings of fact, conclusions of law, and an order.

(b) The hearing examiner shall sign and date the decision. Upon issuance of the decision, jurisdiction shall rest solely in the board, and all motions, petitions and other pleadings filed subsequent to such issuance shall be addressed to the board.

.0602 REVIEW

.   .   .   .

(e) Upon review of any decision of a hearing examiner, the board may adopt, modify or vacate the decision of the hearing examiner and notify the interested parties. ...

Pursuant to the statute and the rules adopted by the Board, it is the function and duty of the hearing officer to conduct the initial hearing and make the requisite findings of fact and conclusions of law. The record clearly shows and there seems to be no dispute that these requirements were complied with. The statute and the rules contemplate that the Board in reviewing the order of the hearing examiner need not itself make findings of fact or conclusions of law separate from those contained in the order of the hearing examiner, but may "adopt, modify or vacate" the order of the hearing examiner. G.S. 95-135(i).

The next phase of the question before us is whether the action of the Review Board comports with or fulfills the stated function and authority of the Board to "adopt, modify or vacate" the decision of the hearing examiner. Following respondent's petition for review, the Board issued its notice of hearing. Following the hearing, the Board entered its written decision. The Board's "decision" contains a section entitled "Statement of Facts" and a section entitled "Decision of the Review Board." In its statement of facts, the Board's decision restated the findings of fact made by the hearing examiner almost verbatim, narrated some of the evidence, and made additional findings. In so doing, it has both adopted and modified the findings of fact portion of the examiner's order.

The decision section of the Board's "decision" is inexpertly written. It contains discussions, arguments, contentions, evidence, and conclusions, all of which are intermixed and thrown together in somewhat random fashion. Inartful though it is, that section of the decision does acceptably serve to modify the

order of the hearing examiner so as to conclude that the cited violation was repeated and serious, justifying the additional penalty assessed. This assignment is overruled.

[2] Respondent next argues that there was no evidence to support the Board's findings and conclusions that respondent's employees were deliberately endangered and that respondent's foreman blatantly disregarded the requirements of the Act. While there seems to be some merit to this portion of respondent's argument, we find that if there was error in including these disputed statements in the Board's decision, it was harmless error because the evidence supports the Board's conclusion that the cited violation was "repeated" and "serious".

The definition of a serious violation is found in G.S. 95-127(18), as follows:[3]

    (18) A "serious violation" shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use at such place of employment, unless the employer did not know, and could not, with the exercise of reasonable diligence, know of the presence of the violation.

It is stated in 45 A.L.R. Fed. 785, at § 2 (1979) that:

    An employer may be found to have committed a serious violation either of the Act's general duty clause, requiring an employer to furnish a place of employment free from recognizable hazards likely to cause death or serious physical harm to his employees, or of a violation [of] the specific safety or health standard promulgated under the OSHA. Most of the latter types of serious violations have occurred with respect to regulations requiring that trenches and excavations in which employees work be properly shored, sloped, or otherwise protected, and regulations requiring the use of equipment or devices to protect employees from the danger of falling.

[3]G.S. 95-127(18) is substantially identical to Sec. 17(k) of the Occupational Safety and Health Act of 1970, 29 U.S.C. 666(j).

*See also* Sec. 8 for annotation of trench or excavation cases. The trench in question was eight feet deep and at least eight feet in length. There was no shoring or wall support of any kind, nor any sloping. Such evidence supports the Board's finding and conclusion that the violation was serious.

Respondent argues that it was not guilty of a repeated violation because the previous violation found against it was for work in soft or unstable soil while the violation in this case was for work in hard, compact soil. We do not believe that the Act should be so narrowly construed. While the element of risk between the two types of soil may reasonably require differing types of precautions, the basic risk or danger to the employee is the same: collapse of the trench or excavation wall. Such was the case here and we find that the evidence supports the Board's conclusion in this respect.

Finally, respondent argues that it should be excused in this case because the acts or omissions of its job superintendent on this occasion were not imputable to it. While we recognize that the acts or omissions of unsupervised employees may on occasion not be reasonably imputed to an employer under the Act, in the case *sub judice*, there was evidence that the decision as to the use of shoring or sloping was delegated by respondent to its job superintendent, and therefore, this argument must be rejected.

Considering the whole record before the Superior Court, *see Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E. 2d 538, 541 (1977), the trial court was justified in affirming the decision of the Review Board and we accordingly find

No error.

Judges ARNOLD and ERWIN concur.